TRINETTE G. KENT (State Bar No. 025180)
KENT LAW OFFICES
10645 North Tatum Blvd., Suite 200-192
Phoenix, AZ 85028
Telephone:  (480) 247-9644
Facsimile:  (480) 717-4781
E-mail: tkent@kentlawpc.com

Of Counsel to:
Michigan Consumer Credit Lawyers
22142 West Nine Mile Road
Southfield, MI 48033
Telephone:  (248) 353-2882
Facsimile:  (248) 353-4840

*Attorneys for Plaintiff,*
*Eric Hise*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric Hise, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Wells Fargo Bank, N.A., a national banking association; and Nissan Motor Acceptance Corporation, a California corporation. | **JURY TRIAL DEMAND** |
| Defendants. | |

1

NOW COMES THE PLAINTIFF, ERIC HISE, BY AND THROUGH COUNSEL, TRINETTE G. KENT, and for his Complaint against the Defendants, pleads as follows:

## JURISDICTION

1. Jurisdiction of this court arises under 15 U.S.C. §1681p.

2. This is an action brought by a consumer for violation of the Fair Credit Reporting Act (15 U.S.C. §1681, *et seq.* [hereinafter "FCRA"]).

## VENUE

3. The transactions and occurrences which give rise to this action occurred in the City of Chandler, Maricopa County, Arizona.

4. Venue is proper in the District of Arizona, Phoenix Division.

## PARTIES

5. The Defendants to this lawsuit are:

   a. Wells Fargo Bank, N.A., ("Wells Fargo"), which is a California corporation that maintains a registered agent in Maricopa County, Arizona; and

   b. Nissan Motor Acceptance Corporation ("Nissan Motor Acceptance"), which is a California corporation that maintains a registered agent in Maricopa County, Arizona.

## **GENERAL ALLEGATIONS**

6. This is an action under the federal Fair Credit Reporting Act ("FCRA") at 15 U.S.C. 1681, *et seq.*

*The Fair Credit Reporting Act and its requirements*

7. The Defendants in this case are called a Furnisher in the credit reporting industry. A Furnisher is a creditor that furnishes its experience with the Plaintiff to the CRAs.

8. Credit reporting activities of both the CRAs and Furnishers are governed by the FCRA.

9. This case involves the Defendants' reporting charge offs, month after month ("MCOs"), on the Plaintiff's consumer credit files. The reporting of MCOs is inaccurate, incomplete, unclear, and in violation of the FCRA.

10. Charge offs are treated as an expense or loss to the creditor. They are referenced in 15 U.S.C. § 1681c of the FCRA. Under this paragraph, generally speaking, a charge off may not be reported on a trade line that is older than 7 years, beginning upon the expiration of the 180-day period measured from the delinquency which immediately preceded the charge off. A charge off is a singular, one time event. Indeed, the Federal Trade Commission has opined that it was Congress' intent in enacting sections 15 U.S.C. §1681c to establish a

1. single date of the delinquency such as to begin the obsolescence period on charge offs. Indeed, a plain reading of the statute shows as much.

11. In today's society, the ability to obtain credit largely determines one's lifestyle and housing options. A charge off is a derogatory piece of information that depresses one's credit score, and the reporting of which makes it difficult, if not impossible, for the Plaintiff to obtain credit.

*Defendants are reporting MCOs*

12. In this case, the following Furnishers are reporting MCOs to the following CRAs on the Plaintiff's credit files ("Errant Trade Lines"):

    a. Wells Fargo Auto Finance with account number: 5023741027429**** is reporting its trade line with MCOs to Experian and Equifax; and

    b. Nissan Motor Acceptance with account number: 9010240397640**** is reporting its trade line with MCOs to Experian; and

13. 15 U.S.C. 1692g requires CRAs, upon request, to clearly and accurately disclose all information in a consumer's file.

14. In the case before this Court, the Defendants, by reporting MCOs, have failed to make the date of the charge off clear to the Plaintiff and to others, including credit grantors. Again, a charge off occurs on a singular date. Without the ability to understand this date from the trade line, it is impossible for the Plaintiff to determine the date that the negative trade line should be removed from the Plaintiff's credit report.

4

15. The information that the Defendants are providing in their trade lines is neither clear nor accurate for the following reasons:

   a. Because the Status section of the trade line for each Furnisher reports the account status as "charge off" and the payment history grid of these trade lines also report charge offs, month after month, it appears that each Furnisher is charging off the account anew, month after month.  There is no legitimate reason for reporting the account as a charge off month after month in the payment history section and in the Status section.   It is confusing, unclear, and inaccurate to anyone who receives the Plaintiff's credit report.

   b. The Defendant Furnishers' trade lines offer the Plaintiff no way to verify when the trade line will be removed from his credit report.  Plaintiff has no way to predict his financial future because these MCO trade lines are an impediment to the Plaintiff seeking new credit and do not give the Plaintiff enough information to predict when they will fall off.

   c. The MCOs are confusing or are potentially unclear to judgment lenders such as mortgage lenders and their underwriters.  These sorts of lenders look beyond the simple credit score to judge whether a consumer meets the guidelines for a mortgage loan.  They review each trade line for content.  MCOs are confusing, or potentially confusing, to such mortgage

5

lenders. There is no legitimate business reason for the Defendants to report charge offs, month after month, in a payment grid section of a consumer's credit file when the account has already been tagged in the Status section as a charge off.

16. On or about February 27, 2016, Mr. Hise obtained his Experian credit file, which showed that Wells Fargo Auto Finance and Nissan reported multiple charge offs on their Errant Trade Lines.

17. On or about March 30, 2016, Mr. Hise submitted letters to Experian and Equifax, disputing multiple charge offs on the Errant Trade Lines.

18. Upon information and belief, Experian and Equifax forwarded Mr. Hise's consumer dispute to Wells Fargo, and Nissan.

19. On or about June 10, 2016, Mr. Hise obtained his Equifax credit file and noticed that Wells Fargo retained the multiple charge offs on the Errant Trade Lines.

20. On or about June 10, 2016, Mr. Hise obtained his Experian credit file and noticed that Wells Fargo and Nissan retained the multiple charge offs on the Errant Trade Lines.

21. None of the Defendants, it appears, have firm policies or procedures in place to prevent the reporting of MCOs or to manage their reporting at all.

22. Since the Defendants lack policies and procedures to refrain from reporting MCOs, they are reporting trade lines on credit reports regarding the Plaintiff without having adequate policies and procedures in place to assure maximum possible accuracy as required by the FCRA at 15 U.S.C. 1681e(b).  Lacking such policies and procedures, the defendant furnishers are causing great financial and credit damage to the consumer and possibly for a far longer period than they may legally report.   By holding the Plaintiff's credit score under water month after month for an indeterminate time, the Plaintiff's ability to obtain goods, services, and credit at reasonable rates is obliterated.  This practice of reporting MCOs is illegal and violates the FCRA.

23. Upon information and belief, the defendants favor this MCO policy.  Credit reporting is a debt collection activity.  The longer that the Defendants can illegally continue to report MCOs on the Plaintiff's credit report, the longer they can artificially depress the Plaintiff's credit score.  The Defendants' apparent goal is to continue holding the Plaintiff's credit score under water for as long as possible, hoping that at some point the Plaintiff will come up gasping for air when he/she has an absolute need for an improved score.  When that day comes, the Defendants will hope to get paid.

24. This pattern and practice by the Defendants of reporting MCOs constitutes a willful, or at the very least a negligent, violation of the Plaintiff's rights under the FCRA.

25. The damages caused by the reporting of multiple charge offs include angst and emotional distress, financial damage, credit damage, costs, and attorneys' fees.

## COUNT I

## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT BY WELLS FARGO

26. Plaintiff realleges the above paragraphs as if recited verbatim.

27. After being informed by Experian and Equifax that Plaintiff disputed the accuracy of the MCOs, Wells Fargo willfully failed to conduct a proper investigation of Plaintiff's dispute.

28. Indeed, Wells Fargo was fully aware or should have been aware that its reporting of MCOs in its trade line on the Plaintiff's consumer credit file with Experian and Equifax was not only inaccurate, but also illegal.  Wells Fargo was also fully aware that it was improperly depressing the Plaintiff's credit score, causing great credit harm and damage to his ability to obtain credit.

29. Had Wells Fargo conducted a reasonable reinvestigation, it would have known that there was no reason for it to report its trade line as a charge off in both the payment history grid and the status section of the Plaintiff's credit report.

30. Wells Fargo willfully retained the MCOs, making its trade line inaccurate, incomplete, and/or unclear.

31. By retaining the MCOs and directing Experian and Equifax to do the same, Wells Fargo willfully violated its duties under the FCRA, causing economic and emotional damages to the Plaintiff.

32. Wells Fargo is liable to Plaintiff for the greater of statutory damages or actual damages sustained by reason of its violations of the FCRA in an amount to be determined by the trier fact, together with an award of punitive damages in the amount to be determined by the trier of fact. Plaintiff is also entitled to reasonable attorneys' fees and costs pursuant to 15 USC 1681n.

**WHEREFORE, PLAINTIFF PRAYS** that this court grant him a judgment against Wells Fargo for the greater of statutory of $1,000 or actual damages, plus punitive damages, along with costs, interest, and attorneys' fees

## COUNT II

**NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY WELLS FARGO**

33. Plaintiff realleges the above paragraphs as if recited verbatim.

34. In the alternative to a willful violation of the FCRA, Plaintiff claims that Wells Fargo negligently violated his rights under this statute.

9

35. After being informed by Experian and Equifax of Plaintiff's objection to the Defendant's reporting of MCOs, Wells Fargo negligently failed to conduct a proper investigation of Plaintiff's dispute as required by 15 USC 1681s-2(b) and to report the results of that investigation to Experian and Equifax.

36. Wells Fargo negligently failed to review all relevant information available to it and provided by Experian and Equifax in conducting its reinvestigation as required by 15 USC 1681s-2(b). Alternatively, Wells Fargo negligently failed to conduct a reasonable reinvestigation and failed to report the results of a reasonable reinvestigation to Experian and Equifax. Specifically, it failed to direct Experian and Equifax to remove the MCOs from its trade line.

37. As a direct and proximate cause of Wells Fargo's negligent failure to perform its duties under the FCRA, Plaintiff has suffered credit and financial damages, mental anguish, suffering, humiliation, and embarrassment.

38. Wells Fargo is liable to Plaintiff by reason of its violations of the FCRA in an amount to be determined by the trier fact together with reasonable attorneys' fees pursuant to 15 USC 1681o.

**WHEREFORE, PLAINTIFF PRAYS** that this court grant him a judgment against the Defendant Wells Fargo for the greater of statutory or actual damages, plus punitive damages, along with costs, interest, and attorneys' fees.

# COUNT III

## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT BY NISSAN MOTOR ACCEPTANCE

39. Plaintiff realleges the above paragraphs as if recited verbatim.

40. After being informed by Experian that Plaintiff disputed the accuracy of the MCOs, Nissan Motor Acceptance willfully failed to conduct a proper investigation of Plaintiff's dispute.

41. Indeed, Nissan Motor Acceptance was fully aware or should have been aware that its reporting of MCOs in its trade line on the Plaintiff's consumer credit file with Experian was not only inaccurate, but also illegal. Nissan Motor Acceptance was also fully aware that it was improperly depressing the Plaintiff's credit score, causing great credit harm and damage to his ability to obtain credit.

42. Had Nissan Motor Acceptance conducted a reasonable reinvestigation, it would have known that there was no reason for it to report its trade line as a charge off in both the payment history grid and the status section of the Plaintiff's credit report.

43. Nissan Motor Acceptance willfully retained the MCOs making its trade line inaccurate, incomplete, and/or unclear.

44. By retaining the MCOs and directing Experian to do the same, Nissan Motor Acceptance willfully violated its duties under the FCRA, causing economic and emotional damages to the Plaintiff.

45. Nissan Motor Acceptance is liable to Plaintiff for the greater of statutory damages or actual damages sustained by reason of its violations of the FCRA in an amount to be determined by the trier fact, together with an award of punitive damages in the amount to be determined by the trier of fact.  Plaintiff is also entitled to reasonable attorneys' fees and costs pursuant to 15 USC 1681n.

**WHEREFORE, PLAINTIFF PRAYS** that this court grant him a judgment against Nissan Motor Acceptance for the greater of statutory of $1,000 or actual damages, plus punitive damages, along with costs, interest, and attorneys' fees

### COUNT IV

### NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY NISSAN MOTOR ACCEPTANCE

46. Plaintiff realleges the above paragraphs as if recited verbatim.

47. In the alternative to a willful violation of the FCRA, Plaintiff claims that Nissan Motor Acceptance negligently violated his rights under this statute.

48. After being informed by Experian of Plaintiff's objection to the Defendant's reporting of MCOs,  Nissan Motor Acceptance negligently failed to conduct a

proper investigation of Plaintiff's dispute as required by 15 USC 1681s-2(b) and to report the results of that investigation to Experian.

49. Nissan Motor Acceptance negligently failed to review all relevant information available to it and provided by Experian in conducting its reinvestigation as required by 15 USC 1681s-2(b).  Alternatively, Nissan Motor Acceptance negligently failed to conduct a reasonable reinvestigation and failed to report the results of a reasonable reinvestigation to Experian.  Specifically, it failed to direct Experian to remove the MCOs from its trade line.

50. As a direct and proximate cause of Nissan Motor Acceptance's negligent failure to perform its duties under the FCRA, Plaintiff has suffered credit and financial damages, mental anguish, suffering, humiliation, and embarrassment.

51. Nissan Motor Acceptance is liable to Plaintiff by reason of its violations of the FCRA in an amount to be determined by the trier fact together with reasonable attorneys' fees pursuant to 15 USC 1681o.

**WHEREFORE, PLAINTIFF PRAYS** that this court grant him a judgment against the Defendant Nissan Motor Acceptance for the greater of statutory or actual damages, plus punitive damages, along with costs, interest, and attorneys' fees.

## JURY DEMAND

Plaintiff hereby demands a trial by Jury.

DATED: September 23, 2016

                                        KENT LAW OFFICES


                                      By: */s/ Trinette G. Kent*
                                        Trinette G. Kent
                                        Attorneys for Plaintiff,
                                        Eric Hise